Arthur W. CARLSBERG, Carlsberg Financial Corporation, a Delaware Corporation, and Esco Corporation, a California Corporation, Plaintiffs,

v.

Deborah R. GATZEK and Sanya Ryan, Defendants.

No. CV 77–678–F.

United States District Court, C. D. California.

Dec. 16, 1977.

Donald L. Stone, Marvin L. Benson, Norbert A. Schlei, Hughes, Hubbard & Reed, Los Angeles, Cal., for plaintiffs.

Charles R. Hartman, Regional Counsel, S. E. C., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiffs Arthur W. Carlsberg, Carlsberg Financial Corporation, and Esco Corporation brought this action against Deborah Gatzek and Sanya Ryan, two attorneys employed by the Securities and Exchange Commission, alleging that the defendants had intentionally violated their constitutional rights. Two pendent claims charging the defendants with the torts of abuse of process and interference with contractual relations are also asserted.

The major allegations of the complaint may be summarized as follows:

Prior to June, 1976, the defendants were assigned to investigate the activities of a company called Pre-Builder Land Corporation (PBL) which had acted as a broker in

certain real estate transactions in which the plaintiffs were also involved. Although the plaintiffs in this case were not targets of that investigation and were not found to have acted unlawfully in connection with the transactions in question, the defendants allegedly formed the intention to use their official positions to injure and inflict harm on the plaintiffs in violation of their rights under the United States Constitution and other provisions of state and federal law. In furtherance of that purpose, the defendants are said to have taken the following actions:

1. On June 8, 1976 the defendants caused an action to be filed in federal district court seeking injunctive relief against Pre-Builder Land Corporation and others charging violations of the securities laws. The prayer for relief in that case included a request that certain disclosures be made to persons who were making payments on promissory notes held by plaintiff Carlsberg or his affiliates as a result of land sales on which PBL had acted as broker. The plaintiffs in the present action were not named as parties in the PBL suit.

2. On two occasions the defendants sought a preliminary injunction ordering the above-described relief. Plaintiffs were not given notice or an opportunity to be heard in those proceedings.

3. On June 17, 1976 the defendants knowingly caused an affidavit containing false statements damaging to plaintiffs to be filed in connection with the PBL case.

4. In the complaint and other documents filed in the PBL action and "on numerous occasions thereafter," the defendants made public statements which identified the plaintiff Arthur Carlsberg as a "friend and associate" and former employer of certain of the principals of PBL, when defendants knew or should have known that such statements were false.

5. On "various occasions" the defendants counseled and advised owners of property purchased from plaintiffs to stop making payments to plaintiffs on their promissory notes.

Pursuant to a stipulation between the parties the action against the defendant Ryan was dismissed without prejudice on September 19, 1977. Defendant Gatzek's motion to dismiss or, in the alternative, for summary judgment, was heard on October 3, 1977. Because certain matter outside of the pleadings has been presented to and considered by the court, the motion will be treated as one for summary judgment. Rule 12(b), F.R.Civ.P.

It is a well-settled rule that on a motion for summary judgment the moving party bears the burden of demonstrating the absence of any genuine issue of fact and of establishing that he is entitled to prevail as a matter of law. *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308 (9th Cir. 1977). Therefore, in considering the instant motion, the court must view the allegations of the complaint and the facts supporting them in the light most favorable to the plaintiffs. Nevertheless, in order to overcome a defendant's summary judgment motion, it must appear that the facts, when so construed, support a viable legal theory which would entitle the plaintiffs to recovery from the defendant for the acts complained of. *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620 (9th Cir. 1977). Bearing these principles in mind, this court concludes that the defendant Gatzek's motion for summary judgment must be granted as to all three causes of action stated in plaintiffs' complaint.

1. *Intentional Violation of Constitutional Rights.*

Under the principles established by the United States Supreme Court in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), a federal official may be sued and held personally liable if he acts under color of law in such a manner as to deprive a person of his constitutional rights. Applying this theory in their first cause of action, the plaintiffs assert that the defendant Gatzek intentionally used her position as a government attorney to deny them the right to due process of law in connection

with the prosecution of the PBL enforcement action.

It is now a well-established rule that a prosecutor in a criminal case enjoys an absolute immunity from liability arising out of activities which constitute "an integral part of the judicial process." *Imbler v. Pachtmen*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).[1] The Ninth Circuit, in the case of *Flood v. Harrington*, 532 F.2d 1248 (1976), expanded the absolute immunity doctrine to protect federal government attorneys like the defendant Gatzek who are involved in civil enforcement actions as well as criminal prosecutions.

■ In their opposition to the present motion the plaintiffs argue that the total immunity conferred in *Imbler* and in *Flood* should not be available where, as here, the person seeking recovery for alleged constitutional violations was not a party to the underlying civil or criminal action. This asserted distinction is not a convincing one. The basic rationale for recognizing an absolute immunity in these cases is the avoidance of a harmful chilling effect on the exercise of prosecutorial discretion.

"A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler v. Pachtman, supra,* 424 U.S. at 424–5, 96 S.Ct. at 992.

■ The importance of averting this deleterious effect is equally compelling whether the threat of suit comes from a party or a non-party. It is inevitable that government prosecutions, both civil and criminal, will frequently have extensive and possibly adverse effects on persons who are not named as parties; and the possibility of damage actions by such persons would not be negligible or easily disregarded. Furthermore, a non-party enjoys essentially the same inherent protections from prosecutorial abuse as are afforded to a party—the most important being the scrutiny of a judicial officer presiding over the conduct of the case. For these reasons, the doctrine of absolute immunity established in *Imbler* must be applied in this case. Therefore, insofar as the plaintiffs' allegations relate to the prosecution of the PBL enforcement case, the defendant is entitled to prevail as a matter of law.

The filing of the PBL complaint and the prayer for relief included therein, the requests for preliminary injunction, the filing of the allegedly false affidavit, and the inclusion of allegedly false statements in the complaint and other pleadings are all actions which clearly fall within this area of absolute immunity. The plaintiffs' allegations of malice and of knowledge are irrelevant with regard to these distinctly prosecutorial actions, since no inquiry is made regarding intent, motive or purpose where the immunity is absolute rather than qualified. *Imbler v. Pachtman, supra,* 424 U.S. at 419, 96 S.Ct. 984. (Prosecutor was immune from suit despite charges that he had knowingly introduced perjured testimony.)

■ The plaintiffs also complain of injury suffered because of defendant's repetition of allegedly false statements contained in the PBL pleadings to members of the public. The statements linking the plaintiffs with the principals of PBL were an important part of the SEC's charge that PBL had failed to disclose certain material facts in connection with the sale of land-re-

---

1. A prosecutor is not completely immune from liability for an infringement of constitutional rights which occurs in connection with investigatory, as opposed to quasi-judicial or advocacy activities. *Briggs v. Goodwin*, 186 U.S.App. D.C. ——, 569 F.2d 10 (1977); *Robichaud v. Ronan*, 351 F.2d 533 (9th Cir. 1965). The distinction raises no problem in this case, however, since the plaintiffs do not complain of any injury arising out of the SEC's investigation of PBL or of plaintiffs themselves. Indeed, the gravamen of plaintiffs' case is that the defendant intentionally prosecuted the PBL enforcement action in a manner calculated to injure the plaintiffs because the Commission's investigation had not revealed any facts which would support an action against them directly. (Complaint ¶¶ 5–6.)

lated securities. The public repetition of those statements cannot reasonably be separated from the defendant's prosecutorial function; and, in fact, such announcements regarding pending enforcement actions are an integral part of the defendant's prosecutorial duties as an SEC attorney.[2] Therefore, the rule of absolute immunity requires judgment for the defendant as to these allegations as well.

The only portion of plaintiffs' complaint which involves conduct arguably outside the scope of defendant's prosecutorial immunity is the allegation that the defendant counseled and advised persons who had purchased property from the plaintiffs through PBL to stop making payments to plaintiffs. It would be difficult to characterize such action as "an integral part of the judicial process" or as related in any meaningful way to defendant's role as a prosecutor. Nevertheless, the defendant is also entitled to summary judgment as to this allegation because it appears on the record now before the court that there is no genuine issue of fact regarding the occurrence of the conduct complained of.

The only evidence which suggests that there was any such counseling of investors in connection with the PBL case is the affidavit of Sue N. Stuard filed as an exhibit to plaintiffs' complaint. In that affidavit Ms. Stuard states that she was present in the offices of plaintiff Arthur Carlsberg when he was told by two investors, Hans and Margaret Heintzen, that they had been told by "representatives of the Securities and Exchange Commission" that they were "doing the right thing" in discontinuing their payments to plaintiff. There is no indication whatsoever that the defendant Gatzek advised the Heintzens not to make further payments; and any inference to that effect is completely refuted by the defendant's deposition testimony explicitly denying that she gave such advice to the Heintzens or any other persons, and by the deposition testimony of Mr. and Mrs. Heintzen, both of whom specifically denied having been counseled by defendant about the discontinuance of their payments. In fact, the Heintzens testified that they had stopped making payments several months before they ever met the defendant or spoke with anyone at the SEC.

The plaintiffs have not filed any additional affidavits in support of their allegation and have not otherwise attempted to contradict the deposition testimony relied on by defendant. Because the plaintiffs submitted no such evidence in opposition to defendant's motion, the facts asserted by the defendant are taken as true. *Jones v. Halekulani Hotel, Inc., supra. See also* Rule 3(g)(3) of the Local Rules for this district.[3] The court finds that defendant

---

2. This finding is supported by defendant Gatzek's deposition testimony and by the official SEC "position description" for a general attorney attached as an exhibit to defendant's motion. *See also*, Disciplinary Rule 7–107(C) of the ABA Code of Professional Responsibility, which specifically permits a prosecutor to make public statements regarding the substance of pending charges and to quote from records of the court.

The SEC's practice of issuing such public announcements is authorized by 15 U.S.C. § 78u(a) which provides that the Commission may, in its discretion, publish information concerning violations of the securities laws. The courts have held that although these publications may result in some injury to persons directly charged with violations or to third parties like plaintiffs who may be incidentally affected, the SEC's practice does not constitute a denial of due process. *Kukatush Mining Corp. v. Securities and Exchange Comm.*, 114 U.S. App.D.C. 27, 309 F.2d 647 (1962). *See also,*

*Federal Trade Comm. v. Cinderella Schools, Inc.*, 131 U.S.App.D.C. 331, 404 F.2d 1308 (1968).

3. Local Rule 3(g)(3) provides that:

In determining any motion for summary judgment, the court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion.

To the extent that it may be read as permitting the entry of summary judgment solely because of a party's failure to submit opposing affidavits, Local Rule 3(g)(3) has been criticized as being inconsistent with Rule 56 of the federal rules, which provides that a party need not file contravening affidavits where the movant's own papers demonstrate the existence of a genuine issue of fact. *Mutual Fund Investors v. Putnam Management Co., supra; Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684 (9th

has fully satisfied the burden of demonstrating the absence of any material issue of fact regarding the alleged instructions to investors. Therefore, in light of the conclusions discussed above concerning the doctrine of prosecutorial immunity, the defendant's motion for summary judgment will be granted as to plaintiffs' entire first cause of action for intentional violation of constitutional rights.

### 2. *Abuse of Process and Interference With Contractual Relations.*

In addition to their federal constitutional claim, the plaintiffs assert causes of action based on two common law tort theories. It is well settled that a federal official is immune from liability for tortious acts committed within the scope of his authority. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 184 U.S.App.D.C. ——, 566 F.2d 289 (1977); *Clifton v. Cox,* 549 F.2d 722 (9th Cir. 1977); *Jones v. Kennedy,* 73 U.S.App.D.C. 292, 121 F.2d 40 (1941). The *Jones* case is particularly relevant here because the court there held that several employees of the SEC were not subject to a suit for interference with business relationships and for malicious prosecution arising out of their conduct of a Commission stop-order proceeding. It is clear, therefore, that the same principles of absolute immunity which require the entry of summary judgment for the defendant on plaintiffs' first cause of action dictate the result as to the pendent state law claims as well.[4]

A further basis for granting defendant's motion as to the second and third causes of action is found in California Civil Code Section 47, subdivision 2, which establishes an absolute privilege for statements made in the course of any judicial proceeding. The provisions of this section have been broadly construed by the California courts: .

> The privilege is an absolute one because it protects publications made with actual malice or with the intent to do harm. . . . Although the application thereof usually arises in the context of a defamation action, it is equally applicable to other actions, with the sole exception of an action for malicious prosecution (citations omitted). The absolute privilege attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation even though published outside the courtroom and no function of the court or its officers is involved. The publication need not be pertinent, relevant or material in a technical sense to any issue if it has some connection or relation to the proceedings (citations omitted). *Pettit v. Levy,* 28 Cal.App.3d 484, 488–9, 104 Cal.Rptr. 650, 652 (1972).

Thus interpreted, this privilege serves as a complete bar to recovery by the plaintiffs for any damage resulting from statements made by the defendant in connection with the PBL enforcement action, including statements contained in the pleadings or made to members of the public. Therefore, to the extent that the plaintiffs' abuse of

---

Cir. 1976). There can be no question, however, that Rule 3(g)(3) offers a valid standard for the evaluation of a motion for summary judgment where, as in the present case, the record as a whole confirms the lack of any material factual dispute. *See Mutual Investors, supra,* 553 F.2d at 625.

4. In fact, the immunity afforded to federal officials in common law tort actions may be considerably broader than the protection available in suits for violations of constitutional rights. *See Expeditions Unlimited Aquatic Enterprises v. Smithsonian, supra,* in which the Court of Appeals for the District of Columbia upheld a museum official's claim of absolute immunity in a defamation action despite the fact that

only a qualified immunity would have applied if the suit had been based on a violation of a constitutionally protected right. *But see Economou v. United States Department of Agriculture,* 535 F.2d 688 (2d Cir. 1976), suggesting that recent Supreme Court decisions granting only qualified immunity in most civil rights cases should be applied to limit the availability of absolute immunity in ordinary tort actions as well. The question of such a distinction in the scope of immunity does not arise in the instant case, however, because, as discussed above, the Supreme Court has recognized an absolute immunity for prosecutors even where constitutional rights are involved.

process and interference with contract claims rest on such allegations, Civil Code § 47(2) affords additional support for defendant's motion for summary judgment as to those causes of action.

For the above stated reasons, it appears to the court that the defendant has clearly established her right to prevail as a matter of law on each of the three causes of action set forth in the plaintiffs' complaint in this case. There being no genuine issues of fact or law remaining to be decided, the defendant's motion for summary judgment will be granted in full and judgment will be entered accordingly.